J-A07043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JORGE GEORGE FRATICELLI | : | |
| | : | |
| Appellant | : | No. 1870 EDA 2022 |

Appeal from the PCRA Order Entered June 14, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004827-1994

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 10, 2023**

Jorge George Fraticelli (Appellant) appeals from the order entered in the Delaware County Court of Common Pleas dismissing as untimely his serial petition for collateral relief filed pursuant to the Post Conviction Relief Act[1] (PCRA).  Appellant seeks relief from the judgment of sentence of life imprisonment imposed on September 26, 1995, following his convictions of second-degree murder, robbery, criminal conspiracy, and possession of a firearm without a license[2] resulting from his involvement in the December 1994 robbery and murder of a drug dealer in Birmingham Township, Delaware County.  On appeal, he argues the PCRA court erred:  (1) in dismissing his petition as untimely filed when he demonstrated the failure to raise his claim

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] *See* 18 Pa.C.S. §§ 2502(b), 3701, 903(a)(1), and 6106(a)(1), respectively.

previously was the result of governmental interference, and (2) in adopting the Commonwealth's response to his petition as dispositive of its ruling. For the reasons below, we affirm.

This Court has previously summarized the facts underlying Appellant's convictions:

> On December 12, 1994, Paul Wayland, a [26-year-old] Australian national, arrived in Delaware after a cross-country trip from California to deliver a large quantity of marijuana. Once in Delaware, Wayland contacted Matthew DiMaggio [and the two] met at a local restaurant. Wayland proceeded to DiMaggio's house, where DiMaggio removed most of the packages of marijuana from Wayland's car and made numerous [telephone] calls arranging a meeting at the Sentinel Motel, [in] Birmingham Township, Delaware County, . . . to package and distribute the drugs.
>
> Later that evening, Wayland and DiMaggio drove to the Sentinel Motel, where they met Jeffrey Burger, a [26-year-old man that] DiMaggio had previously used [to distribute drugs]. Before DiMaggio and Wayland had arrived at the motel room, however, Burger telephoned [Claudio] Manzanet, whom he knew from drug dealing, to advise him of the opportunity to steal marijuana from DiMaggio. Burger was also acquainted with Appellant . . . . [Indeed, a] few weeks earlier, Burger sold Appellant a gun to give to Manzanet in exchange for $20.00 and the promise of cocaine.
>
> When DiMaggio and Wayland arrived at the motel, they started to unpack the drugs and discovered that they needed a scale and baggies to properly measure and distribute the marijuana. Burger volunteered to drive to a garage in West Chester where he stored a scale owned by DiMaggio. While at the garage, [Burger] locked his keys in the car and called DiMaggio[. DiMaggio drove to the garage, picked Burger up in his car, and] drove Burger to get a second set of keys. After DiMaggio returned Burger to the garage, [DiMaggio] retrieved the scale, and drove back to the motel. Burger, however, proceeded to Manzanet's apartment, where he met Appellant, Manzanet, and Manzanet's girlfriend, Amy Sortino. While at [Manzanet's] apartment, the three men concocted a scheme to rob the drugs from DiMaggio at the motel room.

- 2 -

Appellant was in possession of the gun that he had previously purchased from Burger.

A short time later, the group left Manzanet's apartment; Burger drove his car, followed by Sortino, who was driving Appellant's car with Appellant and Manzanet as passengers. Appellant was concerned about his identity, so the two cars stopped at a WaWa convenience store where Burger purchased a hat and pantyhose [as a disguise] for Appellant.

The four then proceeded to the Sentinel Motel. [In accordance with the plan,] Burger re-entered the room where DiMaggio and Wayland were weighing [the marijuana]. About ten minutes later[,] there was a rattling at the door of the motel room. Burger looked out [of] the window and saw Appellant wearing the knit cap that [Burger] had just purchased [from the convenience store. Burger also saw] Manzanet in possession of the gun that [Burger] had provided. . . . [Burger] then opened the door[,] looked out[,] and saw [Appellant and Manzanet move] away [from the door]. Burger reconsidered the situation[,] stepped back [into] the [motel] room[,] and shut the door. The banging [on the door] resumed and the door began to open, then two shots were discharged through the door. At this point[,] Wayland jumped into a closet in the motel room and Burger backed away from the door. The door was then kicked open completely[. DiMaggio] fell down to the floor behind [the door, with blood streaming from his face]. Manzanet entered the room with a gun [in hand] and told Burger to give him the bag of marijuana. A third shot was also discharged. . . . [Unfortunately, as the participants later learned, one of the two initial gunshots struck DiMaggio in the left eye].

[After] the assailants departed, . . . Burger, Wayland, and [a mortally wounded, but alive,] DiMaggio quickly mustered their belongings, loaded them into the vehicles[,] and departed the premises. [Since DiMaggio could not see, Wayland drove DiMaggio's truck]. Burger drove his own vehicle.

Wayland drove to a gas station and[, although he telephoned 911, he did not report an emergency. Wayland then left DiMaggio at the gas station, bleeding on the ground, and hitch-hiked] to a nearby restaurant. . . .

[A] gas station attendant [telephoned the police regarding] DiMaggio[.] When the officers arrived at the gas station, they saw DiMaggio, with a bloodied face, staggering incoherently in circles near his truck. Despite resistance, DiMaggio was transported to

the emergency room where it was [ ] determined that he was blinded by a bullet to his left eye. . . . DiMaggio died [of this wound] nine days later. . . .

[Back at the restaurant on the night of the shooting, police were alerted to Wayland's presence — as Wayland was acting frantically — and officers thus] arrived at the restaurant to question Wayland[. Wayland] initially denied any knowledge of DiMaggio[, but after more questioning, Wayland] admitted [to] his relationship with DiMaggio[] and explained the circumstances surrounding the shooting. . . .

Burger was subsequently connected to the shooting through motel registration and telephone records. Burger, who had been struck in the calf by a bullet during the episode at the motel, did not report the incident to police or seek medical treatment. Ultimately, however, with the assistance of counsel, Burger turned himself into the police and provided detailed statements regarding the Sentinel [Motel] shooting[. Burger's statements implicated] himself and the others in the robbery and homicide. Burger later entered open guilty pleas to [third-degree murder], robbery, and criminal conspiracy. Wayland and Burger both testified for the Commonwealth at trial.

***Commonwealth v. Fraticelli***, 316 EDA 2012 (unpub. memo. at 2-4) (Pa. Super. Jan. 11, 2013) (citation omitted), *appeal denied*, 94 MAL 2013 (Pa. Jun. 25, 2013).

Following a joint trial with Manzanet, Appellant was convicted of second-degree murder, robbery, criminal conspiracy, and possession of a firearm without a license. On September 26, 1995, he was sentenced to an aggregate term of life imprisonment.

Appellant filed a timely direct appeal, raising several claims asserting trial counsel's ineffectiveness.[3] A panel of this Court rejected his claims and affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied review. *See Commonwealth v. Fraticelli*, 516 PHL 1996 (unpub. memo.) (Pa. Super. Nov. 3, 1997), *appeal denied*, 962 MDA 1997 (Pa. Jul. 30, 1998).

Appellant filed his first PCRA petition in July of 1999. Following two evidentiary hearings, the PCRA court denied relief. *See Commonwealth v. Fraticelli*, 2514 EDA 2000 (unpub. memo. at 5) (Pa. Super. May 31, 2001). Appellant filed an appeal to this Court asserting five challenges to prior counsels' ineffectiveness. *See id.* at 5-6. On May 31, 2001, a panel of this Court affirmed the order denying Appellant's petition. *See id.*

Relevant herein, we note that during one of the PCRA hearings, Appellant testified and admitted his involvement in the conspiracy to rob the drug dealers. *See* N.T., 3/7/00, at 79-80. He stated, however, that while he knew there was a gun in the room when they planned the robbery, he did not know Manzanet brought the gun with him. *Id.* at 80-81. Appellant also claimed that when he saw Manzanet displaying the gun as they walked from

---

[3] We note that Appellant's direct appeal was filed before the Pennsylvania Supreme Court's decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), *abrogated by Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), which held that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *See Grant*, 813 A.2d at 738 (footnote omitted).

the car to the hotel room, he told Manzanet to "put that gun away[,]" and when Manzanet refused, Appellant maintained that he "ran back towards the car." *Id.* at 84-85.

Over the ensuing 16 years, Appellant filed four additional PCRA petitions, all of which the PCRA court dismissed. He appealed the denial of relief from his third, fourth, and fifth PCRA petitions[4] — each time, a panel of this Court affirmed the order on appeal and the Pennsylvania Supreme Court denied allocator review. *See Fraticelli*, 3059 EDA 2005, *appeal denied*, 557 MAL 2006; *Fraticelli*, 316 EDA 2012, *appeal denied*, 94 MAL 2013; *Commonwealth v. Fraticelli*, 1997 EDA 2016 (Pa. Super. May 23, 2017), *appeal denied*, 441 MAL 2017 (Pa. Nov. 1, 2017). In addition, Appellant filed a petition for writ *of certiorari* following the denial of this fifth PCRA petition, which the United States Supreme Court denied. *See Fraticelli v. Pennsylvania*, 139 S.Ct. 140 (U.S. 2018).

On June 16, 2021, Appellant filed the present sixth PCRA petition *pro se*. The PCRA court appointed counsel, who filed an amended petition on March 8, 2022. The amended petition acknowledged the facial untimeliness of the filing. *See* Appellant's Amended Petition for Post Conviction Relief Pursuant to 42 Pa.C.S. § 9541 *et seq.* (Appellant's Amended Petition), 3/8/22, at 5-6. *See also* 42 Pa.C.S. § 9545(b)(1) (any PCRA petition, including

---

[4] Appellant filed a second petition in November of 2001, which was denied by the PCRA court in March of 2002; however, he did not appeal that ruling. *See Commonwealth v. Fraticelli*, 3059 EDA 2005 (unpub. memo. at 2) (Pa. Super. Jun. 30, 2006), *appeal denied*, 557 MAL 2006 (Pa. Oct. 18, 2006).

second or subsequent one, must be filed within one year of date judgment of sentence is final); (b)(3) (judgment of sentence final at "the conclusion of direct review . . . or at the expiration of time for seeking the review"). Nevertheless, Appellant asserted that he met the governmental interference exception to the PCRA's timing requirements as set forth in Section 9545(b)(1)(i).[5] He maintained that in prior petitions, he presented valid *Brady*[6] claims that were dismissed by this Court based on the "public records presumption," that is, Appellant could have discovered the alleged *Brady* materials because they were in the public record. *See* Appellant's Amended Petition at 7-11. However, Appellant argued that the Pennsylvania Supreme Court's then-recent decision in *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020)[7] — which disavowed the "public records presumption" with respect to previously unknown facts — "implicitly overruled" the prior decisions of this

_____

[5] *See* 42 Pa.C.S. § 9545(b)(1)(i) (providing exception to one-year filing requirement if "the petition alleges and the petitioner proves that . . . the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States").

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

[7] *Small* was decided on October 1, 2020, which was within one-year of the filing of Appellant's sixth *pro se* PCRA petition. *See* 42 Pa.C.S. § 9545(b)(2) (any petition invoking a timeliness exception must be filed within one year of the date the claim could have been presented).

Court that applied the presumption to deny Appellant relief.[8]  **See** Appellant's Amended Petition at 10-11.  Appellant requested an evidentiary hearing.

The Commonwealth filed a lengthy and detailed response to Appellant's petition, asserting the petition was untimely filed and none of the timeliness exceptions applied.  **See** Commonwealth's Response to Appellant's Facially Untimely Sixth PCRA Petition, 3/28/22, at 37.  On April 5, 2022, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without conducting an evidentiary hearing.  **See** Twenty Day Notice of Intent to Dismiss PCRA Petition Without a Hearing, 4/5/22, at 1.  The court noted that it considered both Appellant's *pro se* and counseled petitions, as well as the Commonwealth's response, and after an "independent review," concluded the petition was untimely.  **Id.** at 1-2.  In doing so, the PCRA court "adopt[ed] the reasoning set forth in the Commonwealth's response to [Appellant's p]etition[,]" but provided Appellant 20 days to file a response.  **Id.** at 1.

On April 11, 2022, Appellant's PCRA counsel sought an extension of time to respond to the court's Rule 907 notice.  **See** Appellant's Motion to Extend Time, 4/11/22, at 1-3 (unpaginated).  The PCRA court did not rule on the

---

[8] Although the amended petition did not specify what **Brady** material was allegedly withheld by the Commonwealth, it referred to claims presented in Appellant's 2001 and 2009 PCRA petitions.  **See** Appellant's Amended Petition at 7, 11.  In his *pro se* petition, Appellant identified a psycho-social evaluation of Burger, which was dated October 25, 1995, and introduced at Burger's sentencing hearing, as the **Brady** material at issue.  **See** Appellant's Petition for Post Conviction Collateral Relief Pursuant to the Post Conviction Collateral Relief Act under 42 Pa.C.S. §[§] 9541-9546, 6/16/21, at 9.

motion, but rather, on June 14, 2022, entered an order dismissing Appellant's PCRA petition without a hearing. **See** Order, 6/14/22, at 1. This timely appeal follows.[9] Appellant subsequently complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the PCRA court issued an opinion, in which it "adopted the reasoning set forth in the Commonwealth's memorandum of law in opposition to the petition" as dispositive. **See** PCRA Ct. Op., 8/23/22, at 1.

Appellant presents two issues on appeal:

1. Whether the [PCRA] court erred by finding [Appellant's] PCRA petition untimely filed, despite the fact the prior application of a public records presumption barring review of claims presented in a previous PCRA petitions amounted to governmental interference satisfying Section 9545(b)(1)(i), in light of the Pennsylvania Supreme Court's decision in [**Small**]?

2. Whether the [PCRA] court abused its discretion and committed legal error by adopting the Commonwealth's position wholesale which contained material misstatements of fact that conflated the timeliness exception requirements and misapplied Section 9545(b)(1)(i)?

Appellant's Brief at 4.

Our review of an order denying PCRA relief is well established: "We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Spotz**, 171 A.3d 675, 678 (Pa.

---

[9] We note that Appellant filed a *pro se* notice of appeal on July 6, 2022, two days before PCRA counsel filed an appeal on July 8th. The *pro se* appeal was docketed at 1869 EDA 2022, and later dismissed, *sua sponte*, as duplicative of the present appeal. **See** 1869 EDA 2022, Order, 11/16/22.

2017). "[W]e review the PCRA court's legal conclusions *de novo*." ***Small***, 238 A.3d at 1280.

The timeliness of a PCRA petition is "jurisdictional in nature" and may only be "overcome by satisfaction of one of the three statutory exceptions codified at 42 Pa.C.S. § 9545(b)(1)(i)-(iii)." ***Spotz***, 171 A.3d at 678. Here, Appellant acknowledges that his petition is facially untimely, as it was "not filed within one year of the date his judgment of sentence became final[.]"[10] ***See*** Appellant's Brief at 13. Nevertheless, he maintains that his claim satisfies the "governmental interference" exception to the timeliness requirements as set forth in Section 9545(b)(1)(i). ***See id.*** at 12.

The governmental interference exception provides relief if a petitioner proves that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" 42 Pa.C.S. § 9545(b)(1)(i).

> The proper question with respect to Subsection 9545(b)(1)(i)'s timeliness exception is "whether the government interfered with Appellant's ability to present his claim and whether Appellant was duly diligent in seeking the facts on which his claims are based."

---

[10] Appellant's judgment of sentence was final on **October 28, 1998**, 90 days after the Pennsylvania Supreme Court denied allowance of appeal and the time for filing a petition for writ of *certiorari* with the United States Supreme Court expired. ***See*** U.S. Sup. Ct. Rule 13(1). His present petition was filed nearly 23 years later.

*Commonwealth v. Chimenti*, 218 A.3d 963, 975 (Pa. Super. 2019) (citation omitted), *appeal denied*, 229 A.3d 565 (Pa. 2020).

Appellant crafts an inventive argument on appeal. He insists that both the PCRA court and this Court improperly obstructed his "right to collaterally attack his conviction" and refused to review his "previously presented claims" by relying on the now-defunct public records presumption. **See** Appellant's Brief at 16. Accordingly, he maintains that this purported obstruction constituted a "breakdown in the processes of the court[s,]" which resulted "in a violation of his Fourteenth Amendment due process rights." **Id.** No relief is due.

Our resolution of Appellant's claim requires consideration of the PCRA's newly discovered facts timeliness exception, as well as the governmental interference exception. By way of background, the newly discovered facts exception requires proof that "the facts upon which the claim is predicated were unknown to the petitioner and **could not have been ascertained by the exercise of due diligence**[.]" 42 Pa.C.S. § 9545(b)(1)(ii) (emphasis added). For many years, the courts of this Commonwealth applied a "public records presumption" when considering the due diligence requirement in Subsection 9545(b)(1)(ii). **See Commonwealth v. Burton**, 158 A.3d 618, 632-633 (Pa. 2017). Courts routinely determined that "information [was] **not unknown** to a PCRA petitioner when the information was a matter of **public record**[.]" **Id.** at 633 (citation & quotation marks omitted; emphases added). **See also Small**, 238 A.3d at 1271 (explaining the under the presumption, "a

court [could] find that information available to the public is not a fact that is 'unknown' to the petitioner") (citations omitted).

In **Burton**, however, the Supreme Court chipped away at its prior decisions and held the public records presumption "**does not apply** to *pro se* prisoner petitioners." **Burton**, 158 A.3d at 638. The Court concluded that application of the presumption to *pro se* incarcerated petitioners was "contrary to the plain language of subsection 9545(b)(1)(ii) and was imposed without any apparent consideration of a *pro se* prisoner's **actual access** to information of public record." **Id.** (footnote omitted & emphasis added).

Subsequently, in **Small**, the Supreme Court "disavow[ed] the public records presumption" entirely. **Small**, 238 A.3d at 1286. The Court concluded that the presumption was contrary to the language of the newly discovered facts exception, which "does not call for any assessment of whether the asserted facts appear in the public record[,]" and was "engrafted . . . upon the statutory language . . . without meaningful discussion." **See id.** at 1283-84. Thus, the Court announced: "To the extent that earlier decisions, including our own, relied upon and applied that presumption to reject a petitioner's claim, they are now overruled." **Id.** at 1286 (footnote omitted).

Appellant filed his present petition within one year of the **Small** decision. **See** 42 Pa.C.S. § 9545(b)(2) (requiring a petition invoking a timeliness exception be filed "within one year of the date the claim could have been presented"). He argues the "PCRA and [a]ppellate [c]ourt's application of [the] 'public records presumption' [in disposing of his prior PCRA petitions,]

- 12 -

resulted in an improper obstruction of [his] right to collaterally attack his conviction, and review of his previously presented claims resulting in a 'breakdown in the processes of the court' in violation of his Fourteenth Amendment due process rights." Appellant's Brief at 16. Appellant insists that the PCRA court and appellate courts which disposed of his earlier petitions "departed from the obligations specified in the plain language of the PCRA statute by presuming [he] knew of facts that appear[ed] in the 'public record.'" *Id.* at 17. He maintains the creation of the public record presumption was a "legal error propagated by the [Supreme] Court that burdened petitioners by strangling their otherwise viable claims from beyond the grave, and streamlining the process of denying potentially meritorious claims." *Id.* at 18 (citation & quotation marks omitted). Accordingly, Appellant contends that the application of the presumption in his case denied him due process, that is, "the opportunity for the presentation of [his] claims at a meaningful time and in a meaningful manner[.]" *See id.* at 19 (emphasis omitted).

Appellant's argument fails for two primary reasons. First, this Court did not rely solely on the public records presumption when it denied relief regarding Burger's psycho-social evaluation in the prior PCRA petition. Second, even if the PCRA court and this Court did apply the presumption, at that time, both courts were bound by *stare decisis* to apply then-controlling decisions of the Pennsylvania Supreme Court approving of the public records presumption.

- 13 -

We note that Appellant first raised concerns about Burger's sentencing hearing in his second PCRA petition, filed in 2001. However, neither Appellant's petition, nor the PCRA court's order denying relief, is included in the certified record.[11] Moreover, Appellant did not appeal the PCRA court's denial of relief with regard to his second petition, so this Court never considered any argument concerning the public records presumption.

However, in his fourth petition, filed on April 8, 2009, Appellant specifically addressed the psycho-social evaluation of Burger. After Appellant filed the petition *pro se*, counsel was subsequently appointed and filed a supplemental memorandum of law on October 16, 2009. Counsel asserted that Cheryl Herst-Hodgins, "a therapist in private practice and the then president of the Institute for Human Resources[,] . . . conducted four interviews of Burger" prior to his sentencing hearing, and prepared a psycho-social evaluation of him in a report dated October 25, 1995. *See* Appellant's Supplemental Memorandum of Law in Support of Petition Filed Under the Post Conviction Relief Act, 10/16/09, at 4. Appellant further stated:

> The Evaluation . . . was introduced as a defense exhibit at Burger's sentencing hearing[ and] contains a detailed recitation by Burger of the events of December 12, 1994, some of which were

_____

[11] The record does include Appellant's January 9, 2002, reply to the Commonwealth's response to his PCRA petition. *See* Appellant's Reply to the Commonwealth's Response to Appellant's Second PCRA Petition, 1/9/02. In that document, Appellant avers he heard a rumor in late 2000 that Burger was already out of prison, and began a letter-writing campaign to obtain information concerning Burger's plea agreement and sentencing. *See id.* at 2-3. He further claimed that after filing a federal lawsuit, he finally received "a small portion of the information" on September 18, 2001. *Id.* at 3.

consistent with his trial testimony and many of which are inconsistent with his trial testimony. Of critical important . . . is [ ] Hirst-Hodgins['] diagnosis of Burger: "[d]ue to the extensive and long term use of drugs by Mr. Burger, my assessment is that [he] may have been having a drug induced psychoses on December 12, 1994." [She] recommended that the [trial c]ourt sentence Burger to 2½ to 5 years' incarceration, significantly lower than the 27½ to 55 years Burger faced under the plea agreement. The [c]ourt ultimately adopted [ ] Hirst-Hodgins' recommendation.

*Id.* at 4-5 (emphasis & footnote omitted)..

Appellant also alleged that he acted with due diligence in requesting "information regarding Burger's sentencing[,]" but was unable to obtain a copy of Hirst-Hodgins' report until he hired a private investigator. ***See*** Appellant's Supplemental Memorandum of Law in Support of Petition Filed Under the Post Conviction Relief Act, at 5-6. He claimed he first received the report on February 17, 2009, less than two months before he filed his fourth PCRA petition. ***See id.*** at 6. Appellant maintained the report constituted newly discovered evidence because Hirst-Hodgins' "assessment that Burger may have been having a drug induced psychoses on December 12, 1994 was unknown at the time of trial and would have been admissible on the issue of Burger's ability to accurately perceive, remember and narrate the events" leading up to the robbery and murder. *Id.* at 10-11 (footnote & quotation marks omitted). He also argued that if the Commonwealth "was privy to this

- 15 -

information prior to [Appellant's] trial," its failure to disclose it to Appellant constituted a **Brady** violation.[12]  **See id.** at 15.

In disposing of Appellant's petition, the PCRA court relied, in part, upon the public records presumption, and concluded that Appellant was "on constructive notice of the matters set forth during Burger's public sentencing proceeding" years before he filed his fourth petition.  **See** PCRA Ct. Op., 1/13/12, at 6.  Significantly, the court also emphasized that Appellant admitted he possessed the transcript from Burger's sentencing hearing in 2001.  Moreover, the court pointed out that during that hearing Hirst-Hodgins testified concerning her findings, and her report was admitted into evidence.  **See id.** at 7.  The PCRA court further noted that Appellant had filed a second PCRA petition in November of 2001, which focused only on Burger's sentencing and did not address Hirst-Hodgins' evaluation.  **Id.** at 7 n.4.

On appeal, this Court affirmed the order denying PCRA relief — without even addressing the public record presumption.  Rather, the panel determined that the information upon which Appellant relied was **not** newly discovered:

> Appellant's attempt to invoke a statutory exception to the PCRA's one-year time-bar fails under the weight of Appellant's own admissions.  Indeed, Appellant's entire, substantive claim for relief is predicated upon [ ] Hirst-Hodgins' expert conclusion that, at the time of the robbery and murder, Commonwealth witness Jeffrey Burger suffered from a substance-induced psychotic disorder.  Appellant claims that he is entitled to a new trial because, if the jury knew of [this] diagnosis, the jury might have

---

[12] We emphasize, however, that Hirst-Hodgins' report was dated October 25, 1995, which was **after** Appellant's July 1995 conviction and September 1995 sentencing.

- 16 -

questioned Burger's "ability to perceive events and to truthfully relate the facts to which he testified at trial."

Yet, [ ] Hirst-Hodgins rendered her expert opinion in 1995 and, as Appellant has admitted, during Burger's 1995 sentencing hearing, [ ] Hirst-Hodgins testified "that she felt in her professional capacity that [ ] Burger suffered from a [substance-induced] psychotic disorder at the time of the incident." Moreover, during Appellant's November 21, 2011[,] evidentiary hearing, Appellant freely admitted that he received the transcript from Burger's 1995 sentencing hearing in September 2001. Therefore, Appellant has admitted that — since September 2001 — he has known of the facts underlying his current claim. Further, although Appellant maintains that his fourth PCRA petition is timely because he only recently received a physical copy of [ ] Hirst-Hodgins' expert report, the record is clear that the substance of the report — or, the underlying "facts" upon which Appellant's collateral claim is based — was set forth in Burger's 1995 sentencing transcript, which Appellant admitted he received and reviewed in 2001.

As Appellant's current petition was filed in April 2009, the petition was not filed "within 60 days of the date the claim could have been presented" and Appellant's attempt to invoke the "after-discovered facts" and "governmental interference" exceptions to the time-bar fails.

*Fraticelli*, 316 EDA 2012 (unpub. memo. at 13-14) (record citations omitted).

Thus, on appeal, this Court denied relief based upon the fact that Appellant was actually in possession of the purported "newly discovered facts," in 2001, eight years before he filed the petition at issue. Because the panel did not apply the public records presumption, his present argument fails.

Moreover, we note that even if this Court had applied the presumption, it would have been required to do so at that time. "It is a fundamental precept of our judicial system that a lower tribunal may not disregard the standards articulated by a higher court." *Commonwealth v. Randolph*, 718 A.2d

- 17 -

1242, 1245 (Pa. 1998). Indeed, "[b]oth this Court and the trial court are bound by existing . . . precedent under the doctrine of *stare decisis*." **Smith v. A.O. Smith Corp.**, 270 A.3d 1185, 1194 (Pa. Super. 2022), *appeal denied*, 283 A.3d 1247 (Pa. 2022). **See also Commonwealth v. Shaffer**, 734 A.2d 840, 844 n.6 (Pa. 1999) (Supreme Court reminding the Superior Court "of its duty and obligation to follow the decisional law of" the Supreme Court).

Accordingly, we conclude that Appellant has failed to establish the governmental interference exception to the PCRA's timing requirements. Specifically, in rejecting a prior appeal, this Court did **not** rely upon the now-defunct public records presumption. Moreover, even if it had, we would have been bound to do so by precedent existing before the Supreme Court disavowed the presumption in **Smith**. Thus, no relief is warranted on Appellant's first claim.

Appellant's second issue challenges the PCRA court's decision to rely solely on the Commonwealth's response to Appellant's petition in lieu of filing an opinion discussing Appellant's claims. **See** Appellant's Brief at 23; **see also id.** at 38 ("The Pennsylvania Supreme Court has condemned the practice of courts making wholesale adoption of a party's brief, in lieu of filing a considered opinion.") (citation & emphasis omitted). Appellant maintains the Commonwealth's response "contained material misstatements of fact that conflated the timeliness exception requirements and misapplied S[ubs]ection 9545(b)(1)(i)." **Id.** at 23. Indeed, he notes that the Commonwealth argued that the **Smith** decision did not constitute either a newly discovered fact or a

new constitutional right for purposes of the PCRA timeliness exceptions set forth in Subsection 9545(b)(1)(ii) and (iii) — exceptions that he did not rely upon in his petition. *See* Appellant's Brief at 25-27. Accordingly, Appellant concludes a "remand to the PCRA court is required." *Id.* at 39. We disagree.

Preliminarily, we note with disapproval the PCRA court's wholesale adoption of the Commonwealth's memorandum of law in opposition to Appellant's petition in lieu of filing a separate opinion. The Pennsylvania Supreme Court has disapproved of this practice. *See Commonwealth v. Williams*, 732 A.2d 1167, 1176 (Pa. 1999) (criticizing PCRA court's "decision to incorporate the Commonwealth's brief to supply the reasons for dismissal of [appellant's] petition" in death penalty case, and remanding for the PCRA court to address claims that required "additional consideration"); *see also Commonwealth v. Fulton*, 876 A.2d 342, 345 (Pa. 2002) (applying *Williams* rule to non-capital PCRA appeal; recognizing need for "independent judicial analysis" when first PCRA petition was summarily dismissed without a hearing).

However, the present appeal arises from Appellant's **sixth** attempt to establish his right to collateral relief from a sentence that was imposed in July of 1995, nearly 28 years ago. Moreover, our review of Appellant's claim does not involve any consideration of fact finding by the PCRA court, but rather, focuses solely on a statutory analysis of the PCRA's governmental interference exception to the timing requirements, based upon the existing certified record. Therefore, we conclude the lack of a separate statement of reasons by the

PCRA court does not hamper our review, nor demonstrate a lack of independent analysis by the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2023